**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JAMES D. BLODGETT, #63050** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21cv510** |
| | § | |
| **GRAYSON CNTY., ET AL.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court are Defendants Tom Watt, Sheriff of Grayson County ("Sheriff Watt"), and Grayson County, Texas' Second Motion to Dismiss (Dkt. #30) ("Sheriff Watt and Grayson County's Second Motion to Dismiss") and Defendant Grayson County Health Department's (together with Sheriff Watt and Grayson County, "Defendants") Motion to Dismiss (Dkt. #33) (together with Sheriff Watt and Grayson County's Second Motion to Dismiss, the "Motions to Dismiss"). *Pro se* Plaintiff James D. Blodgett ("Plaintiff") filed a response. (Dkt. #50). For the reasons that follow, the Court recommends the Motions to Dismiss (Dkt. ##30, 33) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE.**

## I.    BACKGROUND

On June 28, 2021, *pro se* Plaintiff initiated the instant action regarding complaints about his medical care and conditions of confinement while at Grayson County Jail. (Dkt. #1). Plaintiff is proceeding *in forma pauperis* and was a pretrial detainee at all relevant times. (Dkt. #14). On January 21, 2023, Plaintiff filed a second amended complaint—the live pleading in this matter—stating claims against Defendants related to medical care, conditions of confinement, privileged mail/correspondence, sexual slurs, and access to the telephone system. (Dkt. #26; Dkt. #26-1).

Plaintiff was booked into the Grayson County Jail on December 22, 2020, where he remained until he was transferred on February 2, 2022. (Dkt. #26-1, p. 10; Dkt. #30-3, p. 2). The

Grayson County Jail is operated by the Grayson County Sheriff's Office. Sheriff Watt was the elected Sheriff of Grayson County at all relevant times. (Dkt. #26-1, p. 3; Dkt. #30, p. 7). Sheriff Watt is not alleged to have had any direct contact with Plaintiff.

Plaintiff's live pleading is lengthy, twenty-eight handwritten pages, and raises numerous issues, some vaguely and merely in passing. Specifically, Plaintiff's second amended complaint alleges the following:

- Upon arrival at the Grayson County Jail on December 22, 2020, Plaintiff was evaluated by medical staff of the Grayson County Health Department. (Dkt. #26-1, p. 5, ¶¶ 10-11).

- After evaluation, the Grayson County Health Department conducted a full physical as well as a mental screening. (Dkt. #26-1, p. 6, ¶ 12).

- Medicines were administered to Plaintiff on a regular basis. (Dkt. #26-1, p. 6, ¶ 14).

- During a severe ice storm on February 13, 2021, the water supply for the City of Sherman was shut down, thus shutting down the water supply to the Grayson County Jail. In the "days following, Plaintiff was forced to eat, breathe, live in stagnant feces and urine. No shower, or adequate water to flush for the days February 13, 2021 thru February 20, 2021." Porta-johns were brought to the sally port area for inmate use due to lack of water. Inmates used the porta-johns "on schedule in cuff and [shackled]," and "[w]ater was given from 5-gallon buckets as drinking water, same buckets to used for utility." (Dkt. #26-1, pp. 6-, ¶¶ 15-18).

- Plaintiff mailed his original civil rights complaint on June 28, 2021 (Dkt. #26-1, p. 8, ¶ 24), and the Clerk of Court docketed it on July 2, 2021 (Dkt. #1). On July 5, 2021, Plaintiff received notice from the Court that his complaint had been filed. (Dkt. #26-1, p. 8, ¶ 25).

- On July 1, 2020, a "privileged business correspondence" was opened without his approval as regular mail. That same day, Plaintiff received the mail and filed a grievance that his mail had been tampered with and opened without his consent. (Dkt. #26-1, pp. 7-8, ¶¶ 19-23).

- On July 7, 2021, during a morning walk-through, a detention officer made a "sexual slur" to Plaintiff. On that same morning, Plaintiff filed a grievance. (Dkt. #26-1, p. 8, ¶¶ 26-27).

- On July 8, 2021, an inmate who "had been on suicide watch and was declared not fit for confinement by Grayson County Health Department" and Grayson County Sheriff Office staff was housed in general population. The next day, Plaintiff witnessed that inmate being "wheeled out of the pod incoherent and eyes bulged out, and hands locked up" after having fallen off the top bunk and having a seizure. (Dkt. #26-1, p. 9, ¶¶ 28-30).

- On July 9, 2021, Plaintiff "witnessed ranking officers excite riot in Pod 3-A." (Dkt. #26-1, pp. 9-10, ¶ 31).

- On July 14, 2021, Plaintiff helped another inmate who was having a seizure until help arrived; medical staff and officers dragged the inmate out of his cell and placed him in restraints on the floor until paramedics arrived. (Dkt. #26-1, p. 10, ¶¶ 32-33).

- On August 3, Plaintiff perceived COVID-19 symptoms and requested to be tested for COVID-19 and be given the vaccine. Plaintiff was told he had a common cold and given Tylenol. (Dkt. #26-1, p. 11, ¶¶ 37-40).

- Before Plaintiff became sick, an inmate with COVID-19 symptoms had been taken out of Plaintiff's pod. A different inmate who had been released from the hospital for kidney failure from COVID-19 three days prior was housed in the bunk eight feet away from Plaintiff. (Dkt. #26-1, p. 12, ¶¶ 42-43).

- Eleven inmates housed in Plaintiff's pod were sick with COVID-19 at the same time, and an inmate died from COVID-19 after being transferred from the Grayson County Jail to the hospital. (Dkt. #26-1, pp. 12, 13, ¶¶ 45, 47).

- In August 2021, Plaintiff was able to communicate with his mother and local reporters regarding the lack of medical treatment for COVID-19 at the Grayson County Jail. (Dkt. #26-1, pp. 12-13, ¶¶ 44, 46).

- In September 2021, Plaintiff was given a COVID-19 vaccine. (Dkt. #26-1, p. 13, ¶ 48).

- Plaintiff was involved in cell searches, found to be in possession of contraband and filed multiple grievances and appeals. (Dkt. #26-1, pp. 13-20, ¶¶ 49-71, 76-87).

- In December 2021, Plaintiff filed a grievance regarding his inability to access the telephone system. (Dkt. #26-1, p. 17, ¶¶ 72-73).

- In December 2021, Plaintiff "wrote a privileged correspondence labeled legal mail" regarding this case and addressed it to an individual in California. When the correspondence was returned, it was handled as regular mail. The envelope did not indicate the intended recipient was an attorney; it was intended to be legal mail. (Dkt. #26-1, pp. 18, 21, 24, ¶¶ 75, 90-91, 104).

- Plaintiff filed a grievance with respect to the legal mail incident. Plaintiff spoke to a Jail Standards inspector about the mail incident and other matters. The Jail Captain spoke with Plaintiff regarding the mail matter and asked if Plaintiff wanted to delete the mail from the kiosk, and Plaintiff responded, "no." The resolution of the matter confirmed that the letter was scanned by an off-site company, and it was unknown if it was read. Plaintiff was advised to note "attorney" on any future legal mail to an attorney. (Dkt. #26-1, pp. 21-22, ¶¶ 90, 92-97).

4

- Plaintiff has been able to correspond with a number of persons through allowed legal mail procedures at the Grayson County Jail, including Rick Dunn (attorney); United States District Court, Eastern District of Texas, Sherman Division; Vanita Gupta, Department of Justice, Civil Rights Division; and William Schmidt (attorney). (Dkt. #26-1, pp. 23-24, ¶¶ 99-107).

Plaintiff summarizes his federal constitutional violation causes of action against Defendants as follows:

> Defendants Sheriff Tom Watt, Grayson County Health Department, [and] Grayson County[,] Texas acted with deliberate indifference to Plaintiff's serious life threatening COVID-19 complaints, and all emotional, mental needs, violating Plaintiff's rights, constituting cruel and unusual punishment under the Eighth Amendment, violating access to courts of the 1st Amendment and overall protection afforded to the Plaintiff by the Due Process Clause under the 14th Amendment rights of the United States Constitution.

(Dkt. #26-1, p. 26).

Plaintiff alleges during his entire confinement at the Grayson County Jail, he suffered severe post-traumatic stress disorder, "prolonged deep spells of depression," "prevailing, deep seated anxiety from paranoia, and fearing for his safety and health and deteriorating mental state and emotional distress and has lost all trust in the justice system with[]in the walls of hostile prison environment." (Dkt. #26-1, p. 25).

For relief, Plaintiff seeks: (1) declaratory relief "that the acts and omissions of the Defendants have violated Plaintiff's rights, and stating the Defendants' duties with respect to those rights"; (2) injunctive relief, "commanding Defendants to . . . provide Plaintiff with medications and help to cope with Plaintiff's PTSD, and necessary remed[y] Plaintiff's mental and emotional medical condition"; and (3) compensatory damages "for the unnecessary deterioration of his mental condition and consequential pain and emotional mental anguish suffering, in an amount as

yet to be deduced from the evidence, but in no event in an amount less [than] $100,000.00." (Dkt. #26, p. 5; Dkt. #26-1, pp. 26-27).

On April 20, 2023, Sheriff Watt and Grayson County moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. #30). They urge Plaintiff's claims against Grayson County should be dismissed for failure to plead any policy, practice, or custom that could be the basis for a claim against Grayson County. They also urge Plaintiff's claims against Sheriff Watt should be dismissed on numerous grounds, including insufficiency of the pleadings for lack of personal involvement or supervisory liability. On May 11, 2023, the Grayson County Health Department also moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6), arguing, among other things, that it is a non-jural entity and cannot be sued. (Dkt. #33). Additionally, Defendants note Plaintiff's requests for declaratory and injunctive relief are moot because he is no longer confined at Grayson County Jail. (Dkt. #30, p. 26; Dkt. #33, p. 24). Plaintiff filed a response, reurging the allegations in his second amended complaint. (Dkt. #50).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, any document attached to the motion to dismiss that is central to the claim and referenced by the complaint, and any facts subject to judicial notice. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

The Court is also mindful it "must construe the pleadings of *pro se* litigants liberally to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-01761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court . . . create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)).

# III.  ANALYSIS

## A.  Grayson County Health Department's Motion to Dismiss

Grayson County Health Department's Motion to Dismiss argues dismissal of Plaintiff's claims under Rule 12(b)(6) is proper because the Grayson County Health Department is a non-jural entity, and its lack of jural existence renders it incapable of being sued. (Dkt. #33, pp. 15-17).

Under the Federal Rules of Civil Procedure, a party in a lawsuit must have the capacity to be sued. Fed. R. Civ. P. 17(b). The capacity of a county or city department—such as a county health department—to be sued is determined by the law of the state where the district court is located.[1] *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991); *Davis v. Lamar Cnty. Jail*, No. 4:22-cv-612, 2023 WL 3069762, at *2 (E.D. Tex. Mar. 20, 2023), *report and recommendation adopted*, No. 4:22-cv-612, 2023 WL 3060776 (E.D. Tex. Apr. 24, 2023); *Hutchinson v. Box*, No. 4:10-cv-240, 2010 WL 5830499, at *1 (E.D. Tex. Aug. 20, 2010), *report and recommendation adopted*, No. 4:10-cv-240, 2011 WL 839864 (E.D. Tex. Feb. 17, 2011); *see also* Fed. R. Civ. P. 17(b)(3). Under Texas law, the key issue is whether the entity has been granted the capacity "to sue or be sued." *Dillon v. Jefferson Cnty. Sheriff's Dept.*, 973 F. Supp. 626, 627 (E.D. Tex. 1997); *Hutchinson*, 2010 WL 5830499, at *1. "A plaintiff may not bring a claim against a governmental agency or department unless it enjoys a separate and distinct legal existence." *McGrew v. City of Wichita Falls*, No. 3:14-cv-679, 2015 WL 3528236, at *6 (N.D. Tex. June 4, 2015) (citing *Darby*, 939 F.2d at 313-14); *accord Davis*, 2023 WL 3069762, at *2. In *Darby*, the Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the

---

[1] "State agencies that may sue and be sued are known as jural entities; non-jural entities are not subject to suit." *McGrew v. City of Wichita Falls*, No. 3:14-cv-679, 2015 WL 3528236, at *6 (N.D. Tex. June 4, 2015) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991)).

government itself." *Darby*, 939 F.2d at 313. "A plaintiff has the burden of showing that a . . . department has the capacity to be sued. However, if a plaintiff fails to allege or demonstrate that such defendant is a separate legal entity having jural authority, then claims against that entity should be dismissed as frivolous and for failing to state a claim." *Rhodes v. Lewisville Police Dep't*, 4:20-cv-00007-SDJ-CAN, 2020 WL 8513792, at *3 (E.D. Tex. Dec. 2, 2020), *report and recommendation adopted*, 4:20-cv-007-SDJ, 2021 WL 515398 (E.D. Tex. Feb. 11, 2021) (quoting *Hutchinson*, 2010 WL 5830499, at *1); *see also Kibbey v. Collin Cnty. Det. Facility*, No. 4:21-cv-799-SDJ-CAN, 2023 WL 2305970, at *2 (E.D. Tex. Feb. 6, 2023), *report and recommendation adopted*, No. 4:21-cv-799-SDJ, 2023 WL 2288955 (E.D. Tex. Feb. 28, 2023).

    Plaintiff's second amended complaint contains no allegations that Grayson County has taken explicit steps to grant the Grayson County Health Department with jural authority. (*See* Dkt. #26; Dkt. #26-1); *see also Thrasher v. Fort Worth Police Dep't*, No. 4:20-cv-350-SDJ-KPJ, 2020 WL 8484809, at *3 (E.D. Tex. Dec. 14, 2020), *report and recommendation adopted*, No. 4:20-cv-350-SDJ-KPJ, 2021 WL 489633 (E.D. Tex. Feb. 10, 2021). The Grayson County Health Department does not have a separate legal existence. Federal courts in Texas have repeatedly and consistently held a county health or medical department is not a jural entity that can be sued. *See, e.g.*, *Stewart v. Ramirez*, No. CIV.A. H-08-449, 2009 WL 890394, at *4 (S.D. Tex. Mar. 27, 2009) (the Harris County Jail's medical department is not a separate legal entity having jural authority); *Gonzales v. Lew Sterrett Dallas Cnty. Jail*, No. 3:08-CV-1510-D, 2008 WL 4921428, at *2-3 (N.D. Tex. Nov. 13, 2008) (medical department of county jail is a non-jural entity not subject to suit); *Edwards v. Dallas Cnty. Jail Med. Dep't*, No. 3:07-CV-0886-G, 2007 WL 2687615, at *2 (N.D. Tex. Sept. 13, 2007) (the Dallas County Jail Medical Department is not a separate legal entity having jural authority); *Althouse v. Hill*, No. 3-02-CV-1263-D, 2003 WL 21730539, at *2

(N.D. Tex. Mar. 7, 2003) (the Dallas County Jail Medical Department and the Dallas County Department of Health and Human Services do not have a separate legal existence).

Accordingly, Grayson County Health Department's Motion to Dismiss (Dkt. #33) should be granted, and Plaintiff's claims against the Grayson County Health Department should be dismissed with prejudice as frivolous and for failing to state a claim, because the Grayson County Health Department is a non-jural entity with no capacity to be sued. *See Davis*, 2023 WL 3069762, at *2; *Rhodes*, 2020 WL 8513792, at *3; *Hutchinson*, 2010 WL 5830499, at *1.

**B.  Sheriff Watt and Grayson County's Second Motion to Dismiss**

**1.  Plaintiff's Claims Against Grayson County**

Plaintiff seeks to hold Grayson County liable for the alleged constitutional violations. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "municipalities may be sued under § 1983 but cannot be held liable for acts of their employees under a theory of *respondeat superior*." *Gomez v. Galman*, 18 F. 4th 769, 777 (5th Cir. 2021). To state a claim for municipal liability under *Monell*, Plaintiff must plead three elements: (1) an official policy; (2) that was promulgated by a policy maker; and (3) that was the "moving force" behind the violation of the constitutional right. *Id.* (quoting *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017)); *see also Doe v. Harris Cnty.*, No. 21-20251, 2022 WL 220114, at *5 (5th Cir. Jan. 24, 2022) (per curiam) (applying the rule to claims asserted against a county entity). A policy constitutes the "moving force" behind an alleged violation if there is "'a direct causal link' between the policy and the violation." *See Covington v. City of Madisonville, Tex.*, 812 F. App'x 219, 225 (5th Cir. 2020) (per curiam) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)). Additionally, "[t]he official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional

violations would result.'" *James*, 577 F.3d at 617 (quoting *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

An "official policy" under *Monell* can take different forms: it can be either an official written policy or a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Gomez*, 18 F.4th at 777 (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018)). A plaintiff who does not allege an official written policy faces a high bar to prove an official custom:

> Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body that the objectionable conduct is the expected, accepted practice of city employees. It is thus clear that a plaintiff must demonstrate a pattern of abuses that transcends the error made in a single case. A pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question. A pattern also requires sufficiently numerous prior incidents, as opposed to isolated instances.

*Peña Arita*, 470 F. Supp. 3d at 706 (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009)) (emphasis added). "[I]solated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Gates v. Tex. Dep't of Protective and Regul. Servs.*, 537 F.3d 404, 437 (5th Cir. 2008) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)). This is true even at the pleading stage. *See, e.g., Feliz v. El Paso Cnty.*, 441 F. Supp. 3d 488, 503 (W.D. Tex. 2020) ("[A] plausible [municipal liability] claim requires more than a recitation of the incident in which the plaintiff was personally involved."); *Rodriguez*, 2020 WL 7056336, at *9 (finding the plaintiff "failed to allege facts sufficient to permit the court to infer the existence of an official custom" because she "has not alleged, other than in conclusory terms, another instance" of a violation similar to that which she experienced).

Here, Plaintiff points to no written policy or custom attributable to Grayson County that was the moving force behind the alleged violations of his constitutional rights. To the contrary, Grayson County Sheriff's Office written policy directs all Sheriff's Office employees to properly defend and protect the constitutional rights of inmates, to protect "any person being taken into custody from physical injury," to "maintain a working knowledge" of federal, state, and local laws, and to not "participate in, or allow, capricious or arbitrary acts which deny or abridge a person's rights as guaranteed by law." (Dkt. #30-1, pp. 2, 4-5). The written policy also directs Grayson County Sheriff's Office deputies and detention officers to "take appropriate action to protect life and property, preserve the peace, prevent crime, aid persons and other members." (Dkt. #30-1, p. 6). Additionally, a Standard Operating Procedures Health Services document establishes medical care at the Grayson County Jail will be independently determined and administered by medical staff with the Grayson County Health Department. (Dkt. #30-2).

Plaintiff's allegations regarding inadequate medical care appear to relate to a one-time incident in which he reported COVID-19 symptoms and was told he had a common cold and given Tylenol. As an initial matter, Plaintiff fails to sufficiently plead a constitutional violation claim with respect to the medical treatment he received at the Grayson County Jail. The crux of Plaintiff's claim is that Defendants were deliberately indifferent to his serious medical needs with regard to Plaintiff's complaints of COVID-19 symptoms. The Fifth Circuit has held pretrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001); *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996). "To establish a constitutional violation [on this theory], a plaintiff must show that the defendant: (1) was aware of facts from which the inference could be drawn that a

12

substantial risk of serious harm exists; (2) subjectively drew the inference that the risk existed; and (3) disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (quotation omitted). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quotation omitted). "And[ ] the failure to alleviate a significant risk that [the official] should have perceived[ ] but did not is insufficient to show deliberate indifference." *Id.* (quotation omitted). By Plaintiff's own admission, he received medical care and treatment, including Tylenol, when he presented with COVID-19 symptoms, and he ultimately received the COVID-19 vaccine. Plaintiff's second amended complaint fails to sufficiently plead Grayson County officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in conduct that clearly evinced a "wanton disregard for any serious medical needs." *See id.* Plaintiff's disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. *See Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Furthermore, to the extent Plaintiff argues medical staff at Grayson Couty Jail misdiagnosed him with a common cold instead of COVID-19, "[i]t is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Domino*, 239 F.3d at 756.

Moreover, even assuming Plaintiff sufficiently pleaded a constitutional violation regarding treatment of his COVID-19 symptoms, Plaintiff fails to identify any other incidence in which an inmate was similarly deprived of medical care. Additionally, although Plaintiff alleges other inmates in his pod contracted COVID-19, an inmate died of COVID-19, and another inmate

experienced a seizure (Dkt. #26, pp. 14-15), Plaintiff fails to allege the inmates were deprived of medical care. Plaintiff's allegations do not demonstrate a pervasive, widespread pattern or custom tantamount to an official policy to deprive inmates of medical care at the Grayson County Jail. *See Chapa v. City of Pasadena*, No. 4:21-CV-3444, 2022 WL 3091546, at *4 (S.D. Tex. July 15, 2022), *report and recommendation adopted*, No. 4:21-CV-03444, 2022 WL 3084475 (S.D. Tex. Aug. 2, 2022) (only three examples of allegedly similar incidents over the course of several years—which does not establish a widespread pattern or custom tantamount to an official policy); *cf. Feliz*, 441 F. Supp. 3d at 503 (finding the plaintiff pleaded a custom where the plaintiff cited to other litigation that "involved improper medical care of a detainee" at the same facility and a state commission report that "found pervasive failures in [the facility's] provision of health care"); *Mathis v. S.W. Corr., LLC*, No. 5:20-CV-146, 2021 WL 5088276, at *40 (E.D. Tex. June 15, 2021), *report and recommendation adopted*, 2021 WL 4129123 (E.D. Tex. Sept. 10, 2021) (finding the plaintiff pleaded a custom where the plaintiff alleged "multiple other deaths that occurred" in the facility as a result of the jailers' actions); *Carrillo v. Buendia*, No. 2:20-CV-28, 2020 WL 4584380, at *19 (finding the plaintiff pleaded a custom where he pleaded the alleged wrongdoing was widespread and affected all mentally ill inmates confined in the jail).

Plaintiff's allegation he was housed with inmates who had, or may have been exposed to, COVID-19 does not allege a municipal custom or policy to violate the rights of inmates at the Grayson Conty Jail. *See Witherspoon v. Waybourn*, No. 4:20-CV-313-O, 2021 WL 1056514, at *8 (N.D. Tex. Mar. 19, 2021) (the plaintiff's "allegation that he was housed with inmates who may have been exposed to COVID-19 does not allege a municipal custom or policy to violate the rights of pretrial detainees"), *aff'd*, No. 21-10407, 2022 WL 2188530 (5th Cir. June 17, 2022); *see also Gibson v. Skinner*, No. 4:22CV351, 2023 WL 5810496, at *10 (E.D. Tex. Aug. 3, 2023) (the

plaintiff's allegation that he had to eat meals in his cell pursuant to COVID-19 protocol at the Collin County Detention Facility does not allege a municipal custom or policy to violate the rights of pretrial detainees), *report and recommendation adopted*, No. 4:22-CV-351, 2023 WL 5807836 (E.D. Tex. Sept. 7, 2023). To the extent Plaintiff alleges Grayson County's policies were inadequate to deal with risks posed by the COVID-19 virus, general complaints that policies were inadequate to prevent harm—even if true—are not sufficient to establish a deliberate indifference claim. *See, e.g., Brumfield v. Hollins*, 551 F.3d 322, 328 (5th Cir. 2008) (while jail's policies "lacked the specific directives Brumfield would have preferred to have been in place, policies nonetheless existed"). The fact Plaintiff and other inmates contracted the COVID-19 virus despite these policies does not, by itself, establish deliberate indifference. *See Criswell v. Lumpkin*, No. CV H-20-3108, 2022 WL 1693832, at *5 (S.D. Tex. May 26, 2022).

Plaintiff's allegations his mail was unlawfully opened or tampered with, he was subjected to sexual slurs, and he was unable to access the telephone system were isolated incidents, and do not demonstrate a pervasive, widespread practice at the Grayson County Jail. Plaintiff fails to identify any other incidence in which an inmate's mail was tampered with or unlawfully opened or in which an inmate was subjected to sexual slurs or unable to access the telephone system. Nor does Plaintiff's second amended complaint allege a policy or persistent practice of housing inmates in a manner that threatened their safety. One incident of an inmate who had been on suicide watch being housed in general population does not allege a practice or custom to threaten the safety of inmates at the Grayson County Jail. Similarly, Plaintiff's vague and passing reference to detention officers inciting a riot is wholly insufficient to state a claim there is a practice or custom of officers threatening the safety of inmates at the Grayson County Jail.

Finally, Plaintiff's second amended complaint fails to adequately plead Grayson County maintained a policy or custom of housing inmates in unsafe, unsanitary, or inhumane conditions. Plaintiff's complaints about the unsanitary conditions of confinement relate to a weather event (ice storm) that temporarily caused the water supply to be shut off to the Grayson County Jail; thus, for a temporary period, inmates could not flush toilets or take showers, and drinking water was provided to from utility buckets, and porta-johns were brought in for bathroom use. By Plaintiff's own admission, the conditions were the result of a weather event and not any policy or custom of Grayson County. Additionally, and also by Plaintiff's own admission, the Grayson County Jail addressed the emergency caused by the ice storm by bringing in porta-johns and providing drinking water to the inmates.

Plaintiff fails to sufficiently plead the conditions at the Grayson County Jail were inhumane. The Constitution does not mandate "comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, the Fourteenth Amendment does prohibit detainees from being held under inhumane conditions. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (explaining that the Eighth Amendment does not mandate comfortable prisons or permit inhumane ones). To be found liable for denying humane conditions of confinement, a prison official must know about and disregard "an excessive risk to inmate health or safety." *Id.* at 837. Two requirements must be met in order to allege a constitutional violation related to the conditions of confinement: (1) the condition must objectively be "so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need," and (2) the court must subjectively determine whether prison officials were "deliberately indifferent to inmate health or safety." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal citations and quotation marks omitted). The Constitution "forbids deprivation of the basic elements of hygiene."

*Daigre v. Maggio*, 719 F.2d 1310, 1312 (5th Cir. 1983). "Prison authorities may not withhold from prisoners the basic necessities of life, which includes reasonably adequate sanitation." *Sanford v. Brookshire*, 879 F. Supp. 691, 693 (W.D. Tex. 1994). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron Cnty.*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)). Minor restrictions to hygiene or sanitation, although admittedly unpleasant, do not amount to a constitutional violation. *Johnson v. Texas Bd. of Criminal Justice*, 281 F. App'x 319, 322 (5th Cir. 2008); *see also Fountain v. Thaler*, No. 6:13-CV-958, 2015 WL 5168775, at *17 (E.D. Tex. Sept. 2, 2015) ("There is no constitutional right to a daily shower.") (citing *Walker v. Montzes*, 771 F.2d 920, 928 (6th Cir. 1985)).

Plaintiff's allegations do not suggest inmates at the Grayson County Jail were forced to endure such inhumane conditions. Although Plaintiff alleges water had been shut off to the Grayson County Jail due to the ice storm, and for a temporary period inmates could not shower, used porta-johns, and were provided drinking water from utility buckets,[2] Plaintiff fails to sufficiently plead extreme deprivation of hygiene or sanitation or deprivation of a basic human need. *See, e.g.*, *Reagan v. Burns*, No. 3:16-CV-2590-G-BH, 2019 WL 6733023, at *15 (N.D. Tex. Oct. 30, 2019) (limited access to showers does not amount to an extreme deprivation of hygiene), *report and recommendation adopted*, No. 3:16-CV-2590-G (BH), 2019 WL 6729085 (N.D. Tex. Dec. 10, 2019); *Curry v. Byrd*, No. 5:13-CV-196-DCB-MTP, 2016 WL 1068858, at *3 (S.D. Miss. Jan. 28, 2016) (noting even though the plaintiff claimed he "suffered discomfort" due to the lack of a daily shower, such allegations do not rise to the level of a constitutional violation). Nor does Plaintiff's second amended complaint allege a prison official disregarded "an excessive risk to

---

[2] There is no allegation the drinking water provided to the inmates was contaminated or unsanitary—only that drinking water was provided from utility buckets.

inmate health or safety." Indeed, the Grayson County Jail responded to the emergency situation created by the weather event and attempted to remediate the conditions. Considered as a whole, the conditions of confinement during the ice storm, while plainly not comfortable or pleasant, were temporary and do not rise to the level of unconstitutional inhumane conditions.

In sum, Plaintiff failed to plead facts showing his constitutional rights were violated, if at all, due to a municipal policy or custom. As a result, Plaintiff failed to allege facts that would extend liability to Grayson County, and dismissal of Plaintiff's claim against Grayson County is appropriate. *See, e.g., Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) ("To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'").

### 2. Plaintiff's Claims Against Sheriff Watt in his Official Capacity

Plaintiff seeks to recover against Sheriff Watter in his official capacity as Sheriff of Grayson County. (Dkt. #26-1, p. 3). "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 n.55). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)).

Here, Plaintiff's § 1983 claim against Sheriff Watt in his official capacity is duplicative of Plaintiff's claim against Grayson County and should, thus, be dismissed. *See Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 340 (E.D. Tex. 2021) (granting motion to dismiss official-capacity claims against law enforcement officers); *Venzor v. Collin Cnty, Texas*, No. 4:20-CV-

318-ALM-KPJ, 2022 WL 666989, at *8 (E.D. Tex. Feb. 16, 2022) (granting motion to dismiss official-capacity claims against sheriff), *report and recommendation adopted sub nom. Venzor v. Collin Cnty.*, Texas, No. 4:20-CV-318-ALM-KPJ, 2022 WL 656828 (E.D. Tex. Mar. 4, 2022); *Nuncio v. Webb Cnty.*, No. 5:20-CV-92, 2021 WL 4442518, at *6 (S.D. Tex. Sept. 28, 2021) (mem. op.) (granting motion to dismiss official-capacity claim against sheriff).

### 3. Plaintiff's Claims Against Sheriff Watt in his Individual Capacity

Plaintiff also seeks to extend supervisory liability to Sheriff Watt in his individual capacity. (Dkt. #26-1, p. 3).

To establish liability under § 1983, an individual defendant "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017) (citing *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008)). Sheriff Watt urges he had no personal involvement in the events that are the basis of Plaintiff's claims and Plaintiff has insufficiently pleaded Sheriff Watt's personal involvement. (Dkt. #30, pp. 9, 19, 20, 26 29-32, 35). Indeed, review of the second amended complaint reveals no mention of any act or omission committed personally by Sheriff Watt related to any claim, be it medical indifference, tampering with legal mail, access to the telephone system, sexual slurs, or any of the other conditions of the Grayson County Jail. *See Toliver v. Braddy*, No. 4:20-CV-00132-ALM-CAN, 2021 WL 1086176, at *5 (E.D. Tex. Feb. 11, 2021) ("Nothing in Plaintiff's complaint even vaguely suggests that the Sheriff participated in the alleged wrongful acts."), *report and recommendation adopted*, No. 4:20-CV-132, 2021 WL 1061386 (E.D. Tex. Mar. 19, 2021); *Diggs v. Waybourn*, No. 4:20-CV-706-P, 2021 WL 961676, at *3 (N.D. Tex. Mar. 15, 2021) (dismissing § 1983 claims against a sheriff and officers for "lack of sufficient personal involvement"). Absent

personal involvement or any facts that would give rise to supervisory liability, Plaintiff fails to state a claim upon which relief can be granted.

To the extent Plaintiff is suing Sheriff Watt based on his supervisory role, he cannot be held vicariously responsible for the acts of employees on any theory of vicarious liability or *respondeat superior*. *See Rosas v. Bexar Cnty.*, No. SA-14-CA-1082-DAE, 2015 WL 1966130, at *9 (W.D. Tex. Jan. 31, 2015) ("Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983."), *report and recommendation adopted*, No. 5:14-CV-1082-DAE, 2015 WL 1955406 (W.D. Tex. Apr. 29, 2015). A supervisor may be held liable if he is not personally involved "only if the supervisory official implements a policy 'so deficient that the policy is itself [ ] a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Carter v. Livingston*, No. 9:17-CV-40, 2021 WL 836865, at *8 (E.D. Tex. Jan. 20, 2021) (quoting *Thompkins v. Belt*, 828 F.2d 287, 304 (5th Cir. 1987)), *report and recommendation adopted*, No. 9:17-CV-40, 2021 WL 825490 (E.D. Tex. Mar. 3, 2021). Plaintiff's allegations, though including some of the requisite "buzz words," do not establish Sheriff Watt implemented a policy or practice that was a moving force of any violation of his constitutional rights, discussed more fully *supra*. *See Pike v. Cerliano*, No. 6:20CV619, 2021 WL 3704377, at *4 (E.D. Tex. Aug. 3, 2021) (dismissing § 1983 claim about COVID-19 policies in the county jail) (the plaintiff "has not identified a specific policy or custom" the defendants "have created or implemented that has resulted in a constitutional violation"), *report and recommendation adopted*, No. 6:20-CV-00619, 2021 WL 3700252 (E.D. Tex. Aug. 19, 2021); *see also McPherson v. Adams*, No. CV621-028, 2022 WL 1508955, at *2 (S.D. Ga. May 12, 2022) (failing to meet the pleading standard where the plaintiff's "allegation against defendant [ ] is little more than a collection of legal 'buzzwords,' devoid of factual substance" related to risks

20

of COVID-19). On this basis alone, each of Plaintiff's claims against Sheriff Watt should be dismissed.

## C.  <u>No Longer Confined at Grayson County Jail—Declaratory and Injunctive Relief</u>

Defendants also argue, because Plaintiff is no longer a detainee at the Grayson County Jail, his requests for declaratory and injunctive relief are moot. (Dkt. #30, p. 26; Dkt. #33, p. 24). The Court agrees. The Fifth Circuit and district courts in Texas have repeatedly held that transfer out of the facility complained of moots any claim for declaratory or injunctive relief related to jail-specific remedies. *See, e.g.*, *Kennemer v. Parker Cnty.*, No. 4:20-CV-056-P, 2021 WL 1192249, at *10 (N.D. Tex. Mar. 30, 2021) (collecting cases) ("As [plaintiff] is no longer housed in either of these county jails, however, his claims for injunctive or declaratory relief are moot."), *aff'd*, No. 21-10467, 2022 WL 2610239 (5th Cir. July 8, 2022); *Lee v. Valdez*, No. CIV.A.3:07-CV-1298-D, 2009 WL 1406244, at *14 (N.D. Tex. May 20, 2009) (collecting cases) ("Courts therefore hold, for example, that when a prisoner challenges prison conditions after he is released from confinement, his claim for injunctive and/or declaratory relief is moot, and the prisoner can no longer challenge the prison conditions unless he can point to a concrete and continuing injury.").

## D.  <u>Leave to Amend</u>

Generally, a *pro se* plaintiff should be allowed to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020) (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). A district court may consider the following factors in deciding whether to grant leave to amend: undue delay, bad

faith or dilatory motive on the plaintiff's part, repeated failures to cure deficiencies by previous amendments allowed, undue prejudice to the opposing party, and futility of the amendment. *Id.*

Here, Plaintiff has amended his complaint twice and has provided no indication he would be able to cure the pleading deficiencies identified herein if he were allowed to amend his complaint again. Under these circumstances, the Court finds granting Plaintiff leave to amend would be futile, would unnecessarily delay these proceedings, and would prejudice Defendants, who have already filed motions to dismiss and would likely file additional motions to dismiss if another amended complaint were filed.

**E.  Strike under 28 U.S.C. § 1915(g)**

Under the PLRA, an inmate may not file any lawsuit or appeal *in forma pauperis* if he has three or more lawsuits or appeals previously dismissed as "frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The statutory provision was designed to stop abusive litigious practices employed by inmates.

Because the Court is recommending dismissal of Plaintiff's claims in this case as frivolous and/or for failing to state a claim upon which relief may be granted, it is further recommended Plaintiff be advised this dismissal counts as a strike pursuant to 28 U.S.C. § 1915, and should he accumulate three strikes, he may be denied *in forma pauperis* status and be required to pay the full filing fee when filing additional civil actions or appeals unless he demonstrates he is in imminent danger of serious physical injury.

## IV.  RECOMMENDATION

For the reasons set forth above, the Court recommends the Motions to Dismiss (Dkt. ##30, 33) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE**. The Court further recommends this dismissal be counted as a strike pursuant to 28 U.S.C. § 1915.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 1st day of February, 2024.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE

23